## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANNETTE R. CONNELLY,                    )
                                        )
                    Plaintiff,          )
                                        )
          v.                            )          1:24cv492
                                        )
GUILFORD COUNTY SCHOOLS and             )
ASHLEY TRIPLETT,                        )
                                        )
                    Defendants.         )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Plaintiff's Application to Proceed In Forma Pauperis (Docket Entry 1) (the "Application") in conjunction with her pro se Complaint (Docket Entry 2) (the "Complaint"). For the reasons that follow, the Court will grant Plaintiff's instant Application for the limited purpose of recommending dismissal of this action under 28 U.S.C. § 1915(e)(2) as frivolous and for failing to state a claim.

## RELEVANT STANDARDS

"The federal in forma pauperis statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [is] not without its

problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." <u>Nagy v. FMC Butner</u>, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines . . . the action . . . (i) is frivolous . . . [or] (ii) fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B).

As to the first of those grounds, the United States Supreme Court has explained that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). "The word frivolous is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." <u>Nagy</u>, 376 F.3d at 256-57 (internal citations and quotation marks omitted). As relevant to this case, an action fails as frivolous when "it appear[s] on the face of the complaint . . . that the applicable statute of limitations bars [the plaintiff's claims]." <u>Todd v. Baskerville</u>, 712 F.2d 70, 74 (4th Cir. 1983); <u>see also</u> <u>Nasim</u>, 64 F.3d at 956 ("[T]he [district] court found that [the plaintiff's claim] was barred by the applicable . . . statute of limitations. In these circumstances, the district court did not

2

abuse its discretion in concluding that the action was frivolous under 28 U.S.C. § 1915(d).").[1]

As to the second ground for dismissal under 28 U.S.C. § 1915(e)(2)(B), a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. (citing Twombly, 550 U.S. at 556). The complaint need not contain detailed factual recitations, but must provide "the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

---

[1] Section 1915's frivolousness provision, which now appears in subsection (e), formerly appeared in subsection (d). See Nagy, 376 F.3d at 255.

Further, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[2]

## BACKGROUND

Alleging discrimination during her employment with Guilford County Schools ("GCS"), Annette R. Connelly (the "Plaintiff") sued GCS and Ashley Triplett, principal of Peck Elementary School,

---

[2] Although "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); see also Atherton v. District of Columbia Off. of the Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then quoting Iqbal, 556 U.S. at 679)).

4

(collectively, the "Defendants") on June 14, 2024. (See Docket Entry 2 at 1-3; Docket Entry 2-1 at 1.)[3] GCS employed Plaintiff, currently age 66 (see Docket Entry 2 at 4), as a school counselor at Peck Elementary School from August 2017 (see Docket Entry 2-1 at 1) until the spring of 2024 (see Docket Entry 2 at 5 (alleging employment incidents through at least April 2024), 6 (stating that Plaintiff "had to resign from [GCS]")).

According to the Complaint, Plaintiff first filed a charge with the Equal Employment Opportunity Commission (the "EEOC") on "March 11, 2024" and received a right-to-sue letter on "March 12, 2024." (Docket Entry 2 at 8.)[4] As relevant here, the EEOC charge asserts:

> 1. In August 2017, [GCS] hired [Plaintiff] as a [p]rofessional [s]chool [c]ounselor to work at Peck Elementary.
>
> 2. [Plaintiff] ha[s] been harassed by [] Triplett, [p]rincipal[,] continuously since the fall of 2019. On or around January 29, 2024, [Plaintiff] was given write[-]ups which were based on false information. [] Triplett has continuously scrutinized [Plaintiff's] work compared to [her] co-workers and even gone as far as to alienate [her] from other staff. [] Triplett has even told the new [s]ocial [w]orkers to stay away from Plaintiff[,] however[, their] positions interact on a daily basis.

---

3  Docket Entry page citations utilize the CM/ECF footer's pagination. For legibility reasons, this Opinion omits bold and italicized font in all quotations from Plaintiff's materials.

4  Plaintiff attached a copy of her EEOC charge, but not her alleged right-to-sue letter, to the Complaint. (See Docket Entry 2-1.)

[3. Plaintiff] ha[s] complained to HR multiple times, with very little help or assistance in this matter. [She] last complained to HR about discrimination in March 2024 and ha[s] since been retaliated against by [] Triplett.

[4. Plaintiff] believe[s she is] being discriminated against and retaliated against based on age[.]

(Docket Entry 2-1 at 1-2.)

Thereafter, Plaintiff filed her Complaint on June 14, 2024. (See Docket Entry 2 at 1.) The standard form Plaintiff used for the Complaint identifies a list of protected characteristics and directs the filer to "check all [boxes] that apply" to her discrimination claim and to "explain" the basis for each selection. (Id. at 4.) Plaintiff checked the box beside "age" and stated her date of birth in the space provided. (See id.) She also checked the boxes beside "race" and "color," but did not provide any further explanation. (See id.) Similarly, the form language on the Complaint directs Plaintiff to "check all" "bas[e]s for jurisdiction" applicable to her claims. (Id. at 3.) Plaintiff checked only the box next to the "Age Discrimination in Employment Act of 1967" (the "ADEA"). (See id.)

In support of Plaintiff's claims, the Complaint alleges:

Annette Connelly, [P]laintiff, states [how] the defendant, Ashley Triplett[,] caused harm and violated Annette Connelly's rights.

• Nov. 2018: [Triplett] yelled at [P]laintiff in front of a parent and two staff members.

6

• Oct. 2019: [Triplett] yelled [at] and belittled [P]laintiff in [the] front office in front of several staff members.

• Jan. 2021 school year, 2021-22, 2022-23, 2023-24 school years: [in] [s]tudent [s]upport [m]eetings held on vari[ou]s days and times during the noted school years, [Triplett] humiliated, isolated, scowled [at], belittled, and harassed [P]laintiff in front of two staff members during these meetings in her office.

• Jan. 2022: [Triplett] yelled [at] and belittled [P]laintiff in [the] front office in front of staff members.

• August 2022: [Triplett] told the new [s]chool [s]ocial [w]orker as she came to tour Peck Elementary to stay away from [ P]laintiff (school counselor)[.]

• 2022-23 school year: [Triplett] cause[d] disparate treatment towards [P]laintiff with bullying, harass[ment], isolation, and humiliation during the school year.

• August 2023: [Triplett] instructed the office staff to tell the new [s]chool [s]ocial [w]orker to not involve or tell [P]laintiff (school counselor) about any activities.

• Sept. 2023: [Triplett] retaliated (disparate treatment-harassing, bullying) against [P]laintiff for going to HR against her.

• Nov./Dec. 2023: [While] [P]laintiff [was] recovering from knee surgery with [a] medical note of instructions from [her] doctor, [Triplett] complained/harassed and accuse[d P]laintiff of not responding to teacher[s' requests for] assistance quickly.

• January-April 2024: [Triplett] created write-ups against [ P]laintiff based on false information, one being students with suicidal ideation.

[•] [Triplett] harassed, isolated, and bullied [P]laintiff during these months.

7

Annette Connelly, [P]laintiff, so[ugh]t help and
assistance from [GCS's] HR, HR [d]irector, and [b]oard
[m]embers.  They did nothing!

(Id. at 5.)  The Complaint continues:

[]  Triplett[]  harassed,  bullied,  humiliated,  and
scrutinized [P]laintiff[ ] since 2019.  This continued
and spanned over a period of years.

[Triplett] implemented a campaign as she escalated her
disparate  treatment  towards  [ Plaintiff]  in  the  school
year of 2023-24.

    •    [Triplett]   scrutinized   [Plaintiff's]   work
continuously  and  alienated  [Plaintiff]  from  staff
members.

    •    [Triplett]   place[d]   false   information   in
[Plaintiff's] evaluations.

    •    [Triplett]  implemented  false  information  in
write-ups to be placed in [Plaintiff's] personnel file.

    •    [Triplett]  asked  the  district  not  to  renew
[Plaintiff's]  contract,  basing  it  on  the  false
information she placed in [Plaintiff's] personnel file.

    •    Due   to   [Triplett's]   false   information   in
[Plaintiff's]  personnel  file,  and  the  non-renewal  of
[Plaintiff's]  contract,  [Plaintiff]  had  to  resign  from
[GCS].

(Id. at 6.)

    Finally,  in  the  section  entitled  "Relief,"  the  Complaint

states:

[Plaintiff's]  deep  desire  is  that  [Triplett]  is  not
allowed to do this to anyone else.  She became extremely
aggressive with her abuse against [Plaintiff] during this
2023-24  school  year.   She  created  []  letters  of  false
information to be placed in [Plaintiff's] personnel file
and noted in [Plaintiff's] evaluations.  Her motivation
was for [Plaintiff] to not return to Peck Elementary and
not go into the new school, and she also requested that

8

[Plaintiff's] contract not be renewed with the district[,] which is what they did.

(Id. at 7.)  Also in this section, the Complaint asserts that Plaintiff suffered "mental and physical stress" from the alleged discrimination, including inability to sleep, hives, anxiety requiring medication, and stomach issues that caused Plaintiff to call out of work sick.  (See id.)  Based on the foregoing, Plaintiff seeks, inter alia, one million dollars in punitive damages.  (See id.)

## DISCUSSION

### I.  Preliminary Matters

Notwithstanding the checked boxes for discrimination against Plaintiff based on her "race," "color," and "age" (see id. at 4), the Complaint identifies the ADEA as the sole basis for jurisdiction (see id. at 3).  "The ADEA prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age 'because of' the person's age."  EEOC v. Baltimore Cnty., 747 F.3d 267, 272 (4th Cir. 2014) (citing 29 U.S.C. §§ 623(a)(1), 631(a)).  Thus, the ADEA prohibits only age-based employment discrimination; it does not prohibit discrimination based on race or color.  See 29 U.S.C. §§ 621-634.

However, Title VII of the Civil Rights Act ("Title VII") prohibits employment discrimination based on "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

9

Liberally construing Plaintiff's claims due to her pro se status, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), she thus appears to allege claims for workplace harassment based on her age, race, and color in violation of the ADEA and Title VII (collectively, the "Acts") (see Docket Entry 2 at 4-7). The Complaint also alleges retaliation (presumably under both Acts). (See id. at 5-6.)

As relevant here, "[b]efore a plaintiff can bring an action under Title VII . . . or the ADEA, the plaintiff must first exhaust h[er] administrative remedies with the EEOC," Sarteh v. Youth Focus, Inc., No. 1:08CV113, 2008 WL 11355352, at * 4 (M.D.N.C. Dec. 17, 2008) (Sharp, M.J.) (internal quotation marks omitted), recommendation adopted, 2009 WL 10680180 (M.D.N.C. Feb. 23, 2009) (Beaty, C.J.), by filing a charge of discrimination, see Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 406-07 (4th Cir. 2013). A plaintiff's EEOC charge "limit[s] the scope of any subsequent judicial complaint." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996). Plaintiff's EEOC charge alleges only age discrimination. (See Docket Entry 2-1.) As such, Plaintiff failed to exhaust any claims regarding race or color discrimination, necessitating dismissal of such claims. In any event, such claims fail as a matter of law for the reasons discussed below.

10

## II.  The Complaint Fails as Untimely

The Court should dismiss the Complaint as legally frivolous for failing to comply with the ADEA and Title VII's time limitations.  Under both Acts, if the EEOC dismisses an individual's charge, it must notify the individual, <u>see</u> 29 U.S.C. § 626(e) (ADEA); 42 U.S.C. § 2000e-5(f)(1) (Title VII), through a "right-to-sue" letter, <u>see, e.g.</u>, <u>Laber v. Harvey</u>, 438 F.3d 404, 416 (4th Cir. 2006) (en banc).  The individual must then file suit within ninety days of receiving that right-to-sue letter.  <u>See</u> 29 U.S.C. § 626(e) (ADEA); 42 U.S.C. § 2000e-5(f)(1) (Title VII).

That ninety-day period acts as a statute of limitations.  <u>See</u> <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982); <u>see also</u> <u>Birch v. Peters</u>, 25 F. App'x 122, 123 (4th Cir. 2001) ("A claimant who fails to file a complaint within the ninety-day statutory time period mandated by Title VII . . . and the ADEA . . . generally forfeits her right to pursue her claims." (citing <u>Baldwin Cnty. Welcome Ctr. v. Brown</u>, 466 U.S. 147, 149-51 (1984))).  Thus, "[a]bsent an allegation that 'reasonable grounds exist for an equitable tolling of the filing period,' a complaint filed ninety-one days after the alleged date of receipt of a notice of right to sue from the [EEOC] must be dismissed as time barred." <u>Addison-Potts v. ECU Health Med. Ctr.</u>, No. 4:23-CV-103, 2023 WL 5183009, at *1 (E.D.N.C. Aug. 11, 2023) (quoting <u>Harvey v. City of New Bern Police Dep't</u>, 813 F.2d 652, 653 (4th Cir. 1987)).

Notably, equitable tolling, which may excuse late filing, can occur only in "those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (internal quotation marks omitted).

Here, the Complaint alleges that Plaintiff received her right-to-sue letter from the EEOC on March 12, 2024 (see Docket Entry 2 at 8), making June 10, 2024, the deadline for filing suit, see Fed. R. Civ. P. 6(a)(1)(A). Plaintiff did not file suit until June 14, 2024 (see Docket Entry 2 at 1, 9) and the Complaint fails to explain its tardiness or allege reasonable grounds for equitable tolling (see id. at 1-9). Due to the Complaint's unexcused untimeliness, the Court should dismiss this action as legally frivolous. See Nasim, 64 F.3d at 956.

## III.  The Complaint Fails to State a Viable Claim

Even setting aside its time-barred nature, the Complaint fails to state a viable ADEA or Title VII claim, necessitating its dismissal.

### A.  Claims Against Defendant Triplett

To begin, the ADEA and Title VII provide causes of action against employers only, not supervisors or fellow employees. See, e.g., Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 (4th Cir. 1994) (rejecting individual liability under the ADEA); Lissau

12

v. Southern Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998) (rejecting individual liability under Title VII). As the principal of the school where Plaintiff worked, Triplett served as Plaintiff's supervisor, not her employer. (See Docket Entry 2-1 at 1 (identifying "[GCS]" as Plaintiff's "[e]mployer" and Triplett as school "[p]rincipal").) Accordingly, Plaintiff can only bring ADEA and Title VII claims against GCS, and the Court should dismiss the claims against Triplett.

## B. Discrimination Claims

The ADEA and Title VII prohibit employers from discriminating against an employee based on age and, as relevant here, race or color, respectively. See 28 U.S.C. § 623(a) (ADEA); 42 U.S.C. § 2000e-2(a)(1) (Title VII). To establish an ADEA discrimination claim, Plaintiff must plausibly allege that she: "(1) [was] over the age of 40, and (2) experienced discrimination by an employer (3) because of h[er] age." Tickles v. Johnson, 805 F. App'x 204, 207 (4th Cir. 2020). Specifically, an employee claiming age discrimination must "allege facts permitting an inference that her age was the 'but-for cause'" of the alleged discrimination. Milligan v. Fayetteville State Univ., No. 5:23-CV-328, 2024 WL 3015737, at *5 (E.D.N.C. June 14, 2024) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009)). For example, "[s]imply alleging that you were over age 40 and your employer [discriminated against you] does not plausibly mean that your employer

13

[discriminated against you] because of your age." Grant v. North Carolina Dep't of Transp., No. 5:23-CV-702, 2024 WL 2789388, at *4 (E.D.N.C. May 30, 2024). Title VII similarly requires a plaintiff to allege facts indicating that she experienced employment discrimination "because of," as relevant here, her race or color. 42 U.S.C. § 2000e-2(a)(1); see also McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (explaining that, to state a Title VII claim, the plaintiff must allege facts showing adverse employment action occurred "*because of* [the plaintiff's] race").

Here, the Complaint alleges that Plaintiff's age exceeds 40, warranting ADEA protection (see Docket Entry 2 at 4), but contains no information regarding Plaintiff's race or color (see id. at 1-9). Further, the Complaint's conclusory allegations that Triplett discriminated against Plaintiff by "belittl[ing]," "yell[ing] at," "isolat[ing]," "harass[ing], bull[ying], humiliat[ing], and scrutiniz[ing]" Plaintiff (id. at 5-6), lack sufficient factual content (particularly regarding any age-, race-, or color-based aspect of any such activity) to give GCS "fair notice of what the claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555. The Complaint's assertions that Triplett placed "false information in Plaintiff's evaluations" and "write-ups" (Docket Entry 2 at 6), similarly fail to provide sufficient facts regarding

14

the contents and circumstances of these actions to satisfy _Twombly's_ requirements to state a viable discrimination claim.

In addition, the Complaint lacks any facts indicating that any alleged adverse employment action occurred "because of" Plaintiff's age, race, or color, rather than some other motivation. Regarding Plaintiff's age, beyond checking a box to indicate Plaintiff's belief that she experienced discrimination based on her age and providing her date of birth in the space next to that box (see _id._ at 4), the Complaint does not mention Plaintiff's age at all, let alone in connection with Triplett's alleged actions (see _id._ at 1-9). Plaintiff's lone allegation in her EEOC charge that Triplett "discriminated against [Plaintiff] . . . based on age," (Docket Entry 2-1 at 2), with no facts to connect her age to the conduct in question, also does not plausibly allege that Plaintiff's age motivated any adverse employment actions taken against her. _See_ _Grant_, 2024 WL 2789388 at *4.

The Complaint falls even shorter regarding race or color. Aside from checking boxes to indicate that Plaintiff believes "Defendant[s] discriminated against [her] based on" her race and color (Docket Entry 2 at 4), the Complaint makes no allegations regarding race or color (see _id._ at 1-9). In fact, the Complaint fails to identify Plaintiff's race and color, let alone mention either in connection with any of Triplett's alleged actions. (See

15

<u>id.</u>)  Accordingly, the Court should dismiss Plaintiff's ADEA and Title VII discrimination claims for failure to state a claim.

### C.  **Retaliation Claims**

The Complaint further alleges that "Defendant retaliated . . . against [P]laintiff for going to HR against her."  (<u>Id.</u> at 5.) Pursuant to the ADEA, it is "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by [the ADEA] . . . ."  29 U.S.C. § 623(d).  Title VII similarly renders it unlawful "for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by [Title VII] . . . ."  42 U.S.C. § 2000e-3(a).

Importantly, although a complaint must include sufficient factual matter to show the existence of a plausible claim under the ADEA or Title VII, <u>see</u> <u>Iqbal</u>, 556 U.S. at 662, a complaint need not state a prima facie case of retaliation under the so-called <u>McDonnell-Douglas</u> burden-shifting framework, <u>see</u> <u>Barbour v. Garland</u>, 105 F.4th 579, 590 (4th Cir. 2024) ("[A] Title VII retaliation claim may survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) even if the complaint does not allege facts sufficient to establish [a] prima facie case.").  Put another way, "'the prima facie case is an evidentiary standard, not a pleading requirement.'"  <u>McCleary-Evans</u>, 780 F.3d at 584 (quoting

16

<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510 (2002)) (internal brackets and ellipsis omitted).

Yet, in assessing whether a plaintiff plausibly stated a claim for ADEA or Title VII retaliation, the United States Court of Appeals for the Fourth Circuit often speaks of "a prima facie case of retaliation," <u>Decoster v. Becerra</u>, 119 F.4th 332, 342 (4th Cir. 2024); <u>see also, e.g.</u>, <u>Savage v. Maryland</u>, 896 F.3d 260, 276 (4th Cir. 2018) (considering the prima facie elements of a Title VII retaliation claim in evaluating whether the plaintiff stated a claim for retaliation). Additionally, in determining whether a complaint plausibly stated a claim for retaliation, the Fourth Circuit (recently and repeatedly) has relied on decisions rendered on summary judgment that analyze the prima facie elements of a retaliation claim. <u>See, e.g.</u>, <u>Decoster</u>, 119 F.4th at 341 (citing <u>Okoli v. City of Baltimore</u>, 648 F.3d 216, 223 (4th Cir. 2011) (summary judgment case)); <u>Laurent-Workman v. Wormuth</u>, 54 F. 4th 201, 212 (4th Cir. 2022) (citing <u>Guessous v. Fairview Prop. Invs., LLC</u>, 828 F.3d 208, 217 (4th Cir. 2016) (summary judgment case)); <u>Savage</u>, 896 F.3d at 276 (citing <u>Foster v. University of Md.-E. Shore</u>, 787 F.3d 243, 250 (4th Cir. 2015) (summary judgment case)).

Consistent with that authority from the Fourth Circuit, judges of this Court, while recognizing that a plaintiff need not plead facts that establish a prima facie claim for retaliation, nonetheless have looked to the prima facie elements of a

17

retaliation claim to inform the assessment of the sufficiency of such a claim at the pleading stage. See, e.g., Bean v. Trident Mktg., No. 1:18CV581, 2019 WL 1979960, at *4-5 (M.D.N.C. May 3, 2019) (Tilley, S.J.) ("While [the plaintiff] is not required to plead a prima facie case of retaliation, some courts nevertheless consider the prima facie elements of the claim to help determine if a plaintiff's claims as pleaded allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . Using the prima facie elements as a guide, [the plaintiff] has not alleged sufficient facts to state a claim for retaliation under Title VII." (internal quotation marks omitted)).  That approach makes sense given the overlap between the plain language of the retaliation provisions of the ADEA and Title VII (quoted above) and the elements of a prima facie claim for retaliation (detailed below).  See Dressler v. Daniel, Civ. Action No. 00-489, 2001 WL 1175990, at *1 (D.N.H. Sept. 28, 2001) (observing that courts "inferred from [Title VII's] statutory language that a prima facie case of retaliation requires evidence that the plaintiff engaged in conduct protected by Title VII and . . . suffered adverse action causally connected to the protected activity"), aff'd, 315 F.3d 75 (1st Cir. 2003); Gross v. Culbro Corp., Civ. Action No. 85-4193, 1987 WL 46324, at *8 n.13 (N.D. Fla. Dec. 16, 1987) ("Although the elements of a prima facie case of retaliation were developed in the context of Title VII,

18

given the similarity of statutory language between 42 U.S.C. § 2000e-3(a) and 29 U.S.C. § 623(d), there appears to be no reason not to use those elements in an ADEA case.").

"In order to state a prima facie case of retaliation, a plaintiff must show that (1) the plaintiff engaged in a protected activity; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." Decoster, 119 F.4th at 342 (internal quotation marks and ellipsis omitted). "Protected activity includes activity which opposes any practice made unlawful under Title VII," Wilson v. City of Chesapeake, 290 F. Supp. 3d 444, 461 (E.D. Va. 2018) (citing DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015)), or the ADEA, see Buchhagen v. ICF Intern., Inc., 545 F. App'x 217, 221 (4th Cir. 2013). As relevant here, protected oppositional activity includes complaining to superiors about suspected violations of the ADEA or Title VII. See id. (citing EEOC v. Navy Fed. Credit Union, 424 F. 3d 397, 406 (4th Cir. 2005) ("[P]rotected oppositional activities may include . . . complaints about suspected violations.")).

Turning to the second element, the Fourth Circuit historically required a plaintiff to allege an "adverse employment action," defined as an adverse action that affected "the terms, conditions, or benefits of employment." Von Gunten v. Maryland, 243 F.3d 858, 866 (4th Cir. 2001), abrogated by Burlington N. & Santa Fe Ry. Co.

19

v. White, 548 U.S. 53 (2006) (internal quotation marks omitted). The Supreme Court thereafter clarified that the Title VII retaliation provision "extends beyond workplace-related or employment-related retaliatory acts and harm" to any "materially adverse" action. Burlington, 548 U.S. at 67. An action qualifies as "materially adverse" if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. Despite recognizing the Supreme Court's distinction on that element, see, e.g., Laurent-Workman, 54 F.4th at 213-14, the Fourth Circuit often continues to refer to "adverse employment action" as an element of ADEA and Title VII retaliation claims. See, e.g., Barbour, 105 F. 4th at 589-90 ("[T]o establish a prima facie case of retaliation, the plaintiff must show . . . an adverse employment action . . . ." (internal brackets omitted)); Loose v. CSRA Inc., Civ. Action No. 19-2394, 2021 WL 4452432, at *1 (4th Cir. Sept. 29, 2021) (referring to an "adverse employment action" in affirming dismissal of ADEA retaliation claim for failure to state a claim); Savage, 896 F.3d at 276 ("[T]o state a prima facie claim of Title VII retaliation, [the plaintiff] must allege facts establishing that . . . his employer took an adverse employment action against him . . . ."). Nevertheless, as held by the Supreme Court and the Fourth Circuit, to bring an ADEA or Title VII retaliation claim, a plaintiff need only allege facts showing

20

that her employer's actions qualify as "materially adverse." <u>See</u> <u>Burlington</u>, 548 U.S. at 68; <u>Laurent-Workman</u>, 54 F.4th at 213-14.

Finally, at the pleading stage, the causation element of a retaliation claim imposes "no requirement that the complaint contain facts rebutting any legitimate, nondiscriminatory reason articulated by the employer for its allegedly retaliatory action." <u>Barbour</u>, 105 F.4th at 590. Instead, the complaint simply must "allege[] facts supporting a plausible inference" that the employer took materially adverse action "'because' of [the plaintiff's] protected activity." <u>Holloway v. Maryland</u>, 32 F.4th 293, 300 (4th Cir. 2022). A plaintiff may make such a showing by alleging, for example, "that the protected activity preceded the materially adverse action and . . . that the employer knew the employee engaged in a protected activity." <u>Brown v. University of N. Carolina Health Care Sys.</u>, No. 1:20cv86, 2021 WL 512222, at *9 (M.D.N.C. Feb. 11, 2021) (Schroeder, J.).

Using the foregoing authority as a guide for assessing the legal sufficiency of a claim for retaliation under the ADEA and Title VII, the Court should conclude that the instant Complaint lacks sufficient factual matter to plead a plausible claim. First, the Complaint alleges only that "[Triplett] retaliated . . . against [P]laintiff [for] going to HR against [Triplett]." (Docket Entry 2 at 5.) Plaintiff also alleged in her EEOC charge that she "ha[d] complained to HR multiple times," and "last complained to HR

21

about discrimination in March 2024." (Docket Entry 2-1 at 2.) Notably, however, Plaintiff alleged nowhere that her HR complaint involved allegations of any age-, race-, or color-based discrimination, rather than some other form of grievance not protected by the ADEA or Title VII. (See Docket Entry 2 at 1-9; Docket Entry 2-1 at 1-2.) As such, the Complaint does not show that Plaintiff's reports to HR qualify as "protected activity" under either Act, thereby precluding any retaliation claim. See, e.g., Iqbal, 556 U.S. at 678 (stating that a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" (internal quotation marks omitted)).

In any event, even assuming Plaintiff adequately pleaded protected activity, the Complaint only conclusorily links that protected activity to Triplett's alleged adverse actions, which the Complaint also describes only in conclusory terms. (See Docket Entry 2 at 5 (asserting that "[Triplett] retaliated" against Plaintiff "for going to HR against her" without any further factual development).) The Complaint similarly does not allege that Triplett knew about Plaintiff's complaints. (See id. at 5-7.) Although Plaintiff need not plead facts establishing a prima facie

22

claim of retaliation, the pleading standard requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," <u>Iqbal</u>, 556 U.S. at 678. Under these circumstances, the Court should dismiss the Complaint's retaliation claims for failure to state a claim.

<u>**CONCLUSION**</u>

The Complaint qualifies as untimely and fails to state a plausible claim, necessitating its dismissal.

**IT IS THEREFORE ORDERED** that the Application (Docket Entry 1) be **GRANTED** for the limited purpose of considering this recommendation of dismissal.

**IT IS RECOMMENDED** that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2) as untimely and for failure to state a claim.

This 19th day of February, 2025.

<u>          /s/ L. Patrick Auld          </u>
**L. Patrick Auld**
**United States Magistrate Judge**

23